**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 19, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1280**

Cir. Ct. No. 2018CV278

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

ALDEN ASSOCIATES,

PLAINTIFF-COUNTER DEFENDANT-APPELLANT,

MARGE ALDEN,

COUNTER DEFENDANT-APPELLANT,

V.

JACKI CURRY,

DEFENDANT-COUNTER CLAIMANT-RESPONDENT,

MAJESTIC WELLNESS SPA,

DEFENDANT,

MAJESTIC FALLS, INC.,

COUNTER CLAIMANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Polk County: DANIEL J. TOLAN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Marge Alden and Alden Associates[1] appeal from a circuit court judgment, entered after a bench trial, in favor of Alden against Jacki Curry for unpaid rent and in favor of Curry and Majestic Falls, Inc.,[2] on Curry's counterclaims for constructive eviction, unjust enrichment, civil theft, conversion, tortious interference with contractual and prospective contractual relationships, trademark infringement, and defamation. This case arose out of Curry's failure to pay rent for several months for space in a property owned by Alden, out of which Curry operated a spa business, and Alden's subsequent acts of locking Curry out of the premises; retaining Curry's personal property located on the premises; and, thereafter, operating her own spa business. For the reasons set forth below, we affirm the circuit court's ruling in all respects.

---

[1] Marge Alden testified that she is a "major stockholder" in Alden Associates, which "owns real estate in Wisconsin." For ease of reading, and because the circuit court did not distinguish liability between those parties, we will refer to both parties as Alden unless stated otherwise.

[2] Majestic Falls, Inc., is a Wisconsin business entity owned and operated by Jacki Curry. We will also refer to both parties as Curry unless stated otherwise.

## BACKGROUND

¶2 Curry owned and operated Majestic Falls Spa[3] from 1998 through May 31, 2017, most recently during that period at a property located in St. Croix Falls, Wisconsin. That property—a residential house used to operate a business—is the subject of this case. In 2016, the property was involved in a foreclosure sale by Hiawatha Bank.[4] Curry entered into an agreement with Hiawatha Bank to occupy the property for $1,000 per month until the bank sold the property. At some point during Fall 2016, Curry sought investors—including Alden—for her spa business.

¶3 On December 21, 2016, Alden purchased the property from Hiawatha Bank. Alden and Curry then discussed rental arrangements, and Alden alleged that on January 3, 2017, the parties entered into a written commercial lease.[5] According to Alden, Curry quickly breached the lease by failing to pay

---

[3] Curry's salon license was under the name Majestic Falls Aveda Concept Day Retreat & Spa.

[4] The circuit court took judicial notice of the foreclosure proceedings at trial.

[5] The purported written commercial lease between the parties contained in the record was signed by Curry *on behalf of Majestic Wellness Spa*—an LLC she claims to have no involvement in. Curry testified that she did not notice that "Majestic Wellness Spa" was written on the lease when she signed it.

Evidence at trial revealed that Alden had formed Majestic Wellness Spa—purportedly with Curry as an "organizer," although Curry's first name was spelled incorrectly on the documents—on December 27, 2016. According to Alden, Curry had agreed to "enter into a business to run a spa" with Alden. In exchange, Alden would pay Curry approximately five to ten percent of the business proceeds, but Curry would pay the rent plus all expenses of the premises owned by Alden and her company. In contrast, Curry testified that she had not "been talking to Ms. Alden about forming any company" and that she did not become aware of the existence of Majestic Wellness Spa until May 2017.

(continued)

rent for the months of January, February, March, April, and May 2017. For her part, Curry alleged that Alden never gave her a copy of the lease or told her the amount of the rent, so she assumed it was $1,000—the same monthly rent she had paid to the bank. Curry also believed that the costs of repairs to the property as well as spa services she had provided to Alden and others had been credited against the monthly rent during this period, which is what Alden had told her. The record reflects that she made some partial rent payments during this period.

¶4 Alden alleged that she wrote Curry two letters regarding the unpaid rent and her intention to evict Curry. The first letter, dated February 24, 2017, was titled "QUIT OR CURE NOTICE" and stated that rent must be paid "immediately" or Curry would have to "vacate." The second letter, dated May 14, 2017, stated that Alden had "warned [Curry] several times and now we are terminating your lease." Accordingly, on May 31, 2017, Alden changed the locks on the property, thereby locking Curry and her independent contractors out of the building. Alden then operated her own spa out of the premises.

¶5 On the day that Alden changed the locks, Curry's personal property, personal property of other spa staff members, and Aveda product inventory (hereinafter, retail product) remained on the property. Both Curry and Christina Atkinson, who was a massage therapist for Majestic Falls Spa and who was

---

During discovery, Alden presented a document, titled "Majestic Wellness Spa Understanding" (hereinafter, Exhibit 15), which stated rules for the business and which Alden alleged Curry signed in January 2017. At trial, Curry testified that she did not sign that document, and she presented testimony from an expert witness who opined that the signature on the document did not belong to Curry. In its oral ruling, while discussing the reasons why it failed to find Alden credible, the circuit court stated that Alden "represented that Curry signed the document in her presence. However, … a handwriting expert that this court finds to be credible, testified that [E]xhibit 15 did not contain Curry's signature."

present that day, asked to re-enter the property to retrieve their belongings, but their request was denied. Curry subsequently filed a police report. However, on or about June 1, 2017, Alden procured a "Trespass Notice" from the St. Croix Falls Police Department, which barred Curry from the premises.[6] The record states that the police were not informed that Curry was a tenant of the property. At trial, Curry testified that she never received any indication from Alden that Curry was allowed to come onto the premises after May 31, 2017, to retrieve her property.

¶6 On September 19, 2018, Alden filed a small claims complaint against Curry for money damages, including unpaid rent. The complaint alleged a "[l]ease dated 1/1/17 rent, ins[urance], real estate taxe[s], maintenance, late fees and A/P not paid for 6 months" and "[f]unds embezzled over 5 months." Curry answered and asserted counterclaims for breach of contract; unjust enrichment; property damage or loss caused by crime—civil theft under WIS. STAT. § 895.446 (2021-22);[7] conversion; tortious interference with prospective contractual relations; trademark infringement; defamation; and a violation of WIS. ADMIN. CODE ch. ATCP 134 (Oct. 2021).[8] The circuit court held a six-day bench trial during April and June 2021.

---

[6] Curry testified at trial that she was barred from and remained off of the premises until a circuit-court-ordered walk through on March 5, 2020, during which Curry identified her property within the building. In the court's order, Alden was directed "forthwith" to return items Curry "needed in order to run her business," but Alden allegedly failed to fully comply. Eventually, some items were returned, although testimony revealed that many of those items were in a state of disrepair.

[7] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[8] All references to Chapter ATCP 134 of the Wisconsin Administrative Code are to the October 2021 register unless otherwise noted.

¶7 On May 31, 2022, the circuit court issued its oral ruling after what it described as a "complex and convoluted trial." The court first noted that it did not find either Alden or Curry to be particularly credible, and it offered reasons for these findings on the record, specifically pointing to both women's inconsistent and conflicting testimony. The court then found an implied lease agreement between Alden and Curry for the rental of the property in the amount of $1,675 per month and that Curry had breached the terms of that agreement by failing to pay rent. It therefore awarded Alden $4,747.72 for unpaid rent, inclusive of credits for repairs Curry made to the property.

¶8 As to Curry's counterclaims, the circuit court determined that the two letters Alden wrote to Curry "did not comply with" WIS. STAT. ch. 704; therefore, it "was not a legal eviction of Curry or her business by Alden." *See* WIS. STAT. §§ 704.17, 704.21. The court further concluded that Alden had constructively evicted Curry and that Curry did not voluntarily leave. According to the court:

> Alden and her representatives filed a trespass against Curry and her business. The locks were changed and she was prevented from access to the building, and she didn't return to the premises. This happened on May 31[], 2017. There was in fact a disturbance of Curry's benefit and use and enjoyment of the premises as she was locked out. Therefore, the court concludes that Curry was constructively evicted and is entitled to damages.

The court asserted, however, that "it [could not] establish the actual damages of the constructive eviction based upon the evidence presented but that Curry ha[d] established that it [was] at least one dollar," which it awarded to Curry as nominal damages. The court further awarded punitive damages, "given the willful conduct of Alden in the constructive eviction of Curry," in the amount of $2,500.

6

¶9     As to Curry's unjust enrichment, civil theft, and conversion claims, the circuit court called "the analysis … somewhat the same," and it concluded that Curry had established all three and that Alden must pay the value of the property obtained.  The court made the following findings on the record:

> It bears repeating that Alden changed the locks and filed a trespass against Curry.  Left within the premises was the personal property of Curry and inventory including product for use and sale.  The credible testimony was that there was Aveda product and the other product that was held for use and resale.  [The credible testimony was that] [t]here was also personal property left in the premises due to Curry being locked out and trespassed from the premises.

The court further found "that Curry or her business did not abandon personal property at the premises" and that "Alden unlawfully retained, concealed, and took Curry's business equipment, furnishings, product, and personal property."  The court determined, based upon the best available evidence, that the total value of the retail product and the personal property on the premises was $251,457 as of the date of trial and awarded that amount plus interest, costs, and reasonable attorney's fees.  The court noted that exemplary damages for property lost or damaged by a crime were not warranted.

¶10    On the remaining claims, the circuit court found that Curry had proven that Alden tortiously interfered with Curry's prospective contractual relationships with prospective clients on May 31, 2017, resulting in a loss of customers for the day.  On the trademark infringement claim, the circuit court concluded that "Curry established the use of the names Majestic Falls, Majestic Falls Spa, Majestic Falls and Majestic Wellness Spa" and that "Alden's use of the name and formerly Majestic Falls Spa and Majestic Wellness Spa has caused confusion and deception to the public."  The court also found, by the greater weight of the credible evidence, that Curry had proven that Alden defamed her.

7

Finally, as to the WIS. ADMIN. CODE ch. ATCP 134 claim, the court found that code provision was inapplicable under the facts of the case because while the property "was a house[,] it was not a place of abode. It was a place of a commercial operation," and therefore ch. ATCP 134 "does not apply." Alden appeals.

## DISCUSSION

¶11 As noted above, Alden challenges several of the circuit court's conclusions on appeal.[9] Alden does not, however, appeal the court's judgment as to the claims for tortious interference with prospective contractual relations, trademark infringement, or defamation. Further, Curry has not filed a cross-appeal; therefore, she does not challenge the court's conclusion that she breached an agreement by failing to pay rent or that WIS. ADMIN. CODE ch. ATCP 134 is inapplicable under the circumstances of this case. We will not address these issues further.

¶12 Alden argues that "[t]his appeal is about the personal property left inside the premises after May 31, 2017," but that "[t]he [circuit] court's errors are intertwined." We address below Alden's claims questioning the sufficiency of the evidence supporting the court's findings that she committed a civil theft, that she converted Curry's property, and that she was unjustly enriched, together with her

---

[9] We note that Alden has failed to comply with our Rules of Appellate Procedure. Alden's factual references in her briefs cite only to her appendix. A party must include appropriate references to the record in its briefing. WIS. STAT. RULE 809.19(1)(d)-(e). The appendix is not the record. *United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322. As a high-volume appellate court, we are entitled to expect briefing by an attorney that follows the basic Rules of Appellate Procedure. We caution Alden's counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

claims that the court erred in determining the amount of damages awarded to Curry on each of these claims.

*I. The Circuit Court Found Criminal Intent Under WIS. STAT. § 895.446.*

¶13 First, Alden argues that the circuit court erroneously analyzed three of Curry's counterclaims related to personal property—unjust enrichment, conversion, and civil theft—under identical facts without acknowledging that WIS. STAT. § 895.446 required Curry to prove that Alden had the "specific criminal intent" to steal her personal property. According to Alden, "[a]t best, the record demonstrates that, on May 31, 2017, Alden temporarily prevented Curry and her friends from accessing their personal property by locking a building that Alden owned, and also that Alden was willing to return anyone's property upon their reasonable requests." We disagree and conclude that the record supports the court's implied finding of Alden's specific criminal intent to steal Curry's property on May 31, 2017.

¶14 "WISCONSIN STAT. § 895.446 is a civil statute that provides a cause of action for 'Property damage or loss caused by crime' by reference to enumerated criminal statutes." *Estate of Miller v. Storey*, 2017 WI 99, ¶12 n.6, 378 Wis. 2d 358, 903 N.W.2d 759. One of those enumerated statutes is WIS. STAT. § 943.20, which is the crime of theft. *See* § 895.446(1). To commit civil theft, the individual must "[i]ntentionally" take and carry away, use, transfer, conceal, or retain possession of movable property of another "without the other's consent and with intent to deprive the owner permanently of possession of such

property."[10]    Sec. 943.20; WIS JI—CRIMINAL 1441 (2022); *see also* ***Estate of Miller***, 378 Wis. 2d 358, ¶40 & n.16 ("The cause of action under [§] 895.446 does not have a set of elements unique from criminal causes because the statutory civil claim is tied to whichever enumerated criminal statute listed in subsection (1) applies.").  The burden of proof for a civil theft claim is by the "preponderance of the credible evidence."  Sec. 895.446(2).

¶15    We approach this issue as a challenge to the sufficiency of the evidence.  When reviewing the circuit court's findings as the trier of fact, we apply a highly deferential standard of review.  ***Jacobson v. American Tool Cos.***, 222 Wis. 2d 384, 389, 588 N.W.2d 67 (Ct. App. 1998).  We will not set aside the court's factual findings unless they are clearly erroneous.  WIS. STAT. § 805.17(2).  "Furthermore, the fact finder's determination and judgment will not be disturbed if more than one inference can be drawn from the evidence."  ***Jacobson***, 222 Wis. 2d at 389.  Intent is "not generally susceptible to direct proof"; therefore, "the state of

---

[10]  To better understand the elements of civil theft, we compare that cause of action to the common law tort of conversion.  To establish conversion, the plaintiff must establish:  (1) that the defendant intentionally controlled or took property belonging to the owner; (2) that the defendant controlled or took the property without the owner's consent or without lawful authority; and (3) that the defendant's act with respect to the property seriously interfered with the right of the owner to possess the property. ***Estate of Miller v. Storey***, 2017 WI 99, ¶40, 378 Wis. 2d 358, 903 N.W.2d 759 (citing WIS JI—CIVIL 2200 (2014)).  "[A] civil claim for theft under WIS. STAT. § 895.446 is separate and distinct from a claim for conversion." ***Estate of Miller***, 378 Wis. 2d 358, ¶36.

> [F]irst, the statutory civil theft claim additionally requires that the "defendant knew that the owner did not consent"; second, the statutory civil theft claim differs in that it requires that the "defendant intended to deprive the owner permanently of … possession," not simply that the defendant acted to "seriously interfere with the right of the owner to possess the property."

*Id.*, ¶40 (citations omitted).

mind of the person 'must be inferred from the acts and statements of the person, in view of the surrounding circumstances.'" *Elmakias v. Wayda*, 228 Wis. 2d 312, 320, 596 N.W.2d 869 (Ct. App. 1999) (citation omitted); *see also* WIS JI—CRIMINAL 1441 (2022) ("Knowledge and intent must be found, if found at all, from the defendant's acts, words, and statements, if any, and from all the facts and circumstances in this case bearing upon knowledge and intent.").

¶16     While Alden is correct that the circuit court did not refer to "specific criminal intent," we conclude that the record on appeal supports the court's implicit finding that Alden intended to permanently deprive Curry of her property, with knowledge that Curry did not consent, and with intent to retain the property for her own use.[11]  *See State v. Echols*, 175 Wis. 2d 653, 672, 499 N.W.2d 631 (1993) ("An implicit finding of fact is sufficient when the facts of record support the decision of the [circuit] court.").  During its oral ruling, the court properly

---

[11]  Alden cites to *Tri-Tech Corp. of America v. Americomp Services, Inc.*, 2002 WI 88, ¶21, 254 Wis. 2d 418, 646 N.W.2d 822, for the proposition that WIS. STAT. § 895.446 must be strictly construed.  There, the issue was "whether the treble damages remedy of WIS. STAT. § 895.80 (1999-2000) is available for civil theft by contractor under WIS. STAT. § 779.02(5) [(1999-2000)], and if so, whether it requires proof of the elements of the criminal offense under WIS. STAT. § 943.20(1)(b) [(1999-2000)], including criminal intent." *Tri-Tech*, 254 Wis. 2d 418, ¶1.  Under the facts of that case, our supreme court described "specific criminal intent" as meaning "that the defendant knowingly retained possession of or used contractor trust funds without the owner's consent, contrary to his authority, and with intent to convert such funds for his own use or the use of another." *Id.*, ¶2.  The court explained that "while the intent element required for conviction of the criminal offense … may be inferred from circumstantial evidence, it is nevertheless a specific intent requirement"—not a general intent requirement—"and it is the plaintiff's burden to prove it." *Id.*, ¶29.

Alden claims that the circuit court's "failure even to address Curry's burden of proving 'specific criminal intent,' including any facts that may support that heightened element, and instead merely addressing 'general intent,' independently merits reversal."  Curry claims that *Tri-Tech* is inapplicable because the court was analyzing the difference between criminal and civil theft by a contractor, where the criminal statute requires wrongful intent but the civil statute does not. *See id.*, ¶15.  Regardless of the merits of the foregoing debate, our review of the record finds support for more than general intent.

11

cited the legal standard for civil theft. It then recounted its findings based on evidence of Alden's acts, words, and statements, which we conclude demonstrate the requisite criminal intent.

¶17 The circuit court identified the fact that Alden locked Curry out of the premises and refused to allow Curry re-entry to retrieve her personal property; that Alden secured a Trespass Notice through law enforcement and did so by failing to report that Curry was a tenant; and that Alden retained and later sold retail product belonging to Curry. Further, the court noted "Alden's changing position on what happened to Curry's personal property throughout the trial," explaining that Alden at times claimed the property was actually hers, but also claimed that the property was thrown away, that it was provided to Curry and others, that it was never on the premises, that it had no value, or that Curry actually abandoned the property. Finally, the court stated:

> Incorporating all that I've already said and in an attempt to not repeat myself so many times[,] Alden intentionally retained the movable property of Curry. She didn't have consent, as evidenced by Curry's report to the police, this lawsuit, multiple motions to receive or return the personal property, Alden knew she didn't have the consent for that movable property for the same reason but she also knew that Curry didn't consent because Curry tried to get back in the premises the day she was locked out but couldn't because Alden had changed the locks. So Alden intended to deprive Curry permanently of the movable property.

¶18 Alden argues that even if we assume that the circuit court implicitly addressed specific criminal intent, we should still conclude that the court erred by finding that "Alden intended to deprive Curry permanently of the moveable property" because the record contradicts that finding. Alden's arguments on appeal focus on what the evidence could have alternatively demonstrated. For example, she claims the court did not consider "that Alden locked Curry out

because she failed to pay rent—an eviction," which Alden argues was her actual "specific intent." However, the record shows the court likely did not consider that to be Alden's intent because it found that Alden did not lawfully evict Curry.

¶19 Alden further argues that "the [circuit] court failed to acknowledge that doors can unlock" and that Alden "demonstrated willingness to return property to Curry and to anyone else who bothered to ask." Alden cites the fact that she "told Curry, before her eviction, to remove her personal property," "offered to return property to Curry within days," and "actually returned property to Curry's friends after they asked." Additionally, Alden claims that events after May 31, 2017, cannot prove her intent on that date and that Alden's "mixed testimony suggests Alden's confusion on facts and/or her inability to appreciate or understand legal ownership," not criminal intent. We are not persuaded.

¶20 Based on the record, the circuit court clearly did not agree with many of Alden's assertions. In particular, Alden claims that she was willing to return property, but the court observed that "despite this lawsuit a court order had to be issued to return some personal property." Further, whether Alden was willing to return items of personal property *to other individuals* has no bearing on the issue at trial, which was whether Alden intended to permanently retain possession of Curry's property without her consent. Additionally, one of the items of evidence that Alden refers to in support of her claim that she offered to return Curry's items is an email allegedly sent on June 12, 2017. We discuss this email in further detail below, as it was not admitted into evidence because the court ruled it was hearsay. Regardless, that email purports to return only "boxes" and "records." Finally, the court could reasonably find that Alden's claims that she owned Curry's property when, in fact, she did not could evidence Alden's intent to

13

keep the property permanently, particularly where the evidence showed that Alden sold some of Curry's retail product as part of Alden's spa business.

¶21    While Alden identifies competing evidence from which the circuit court could have drawn different inferences, we see nothing in the record to convince us that the court's conclusion that Alden committed a civil theft is incredible as a matter of law.  The evidence is sufficient to support the court's determination that Alden's acts, words, and statements showed the specific criminal intent to permanently deprive Curry of her property.

*II. Any Error Arising From the Circuit Court's Finding that Exhibit 7 Constitutes Hearsay Was Harmless Error.*

¶22    Alden next argues that the circuit court's "conclusion that Alden's June 12, 2017 email [(Exhibit 7)] constituted hearsay is erroneous because Alden did not offer it for 'the truth of the matter asserted.'"  "A circuit court's decision regarding the admissibility of a hearsay statement is within the discretion of the circuit court." ***State v. Weed***, 2003 WI 85, ¶9, 263 Wis. 2d 434, 666 N.W.2d 485.  We will "uphold a circuit court's decision to admit or exclude evidence if the court examined the relevant facts, applied a proper legal standard, and reached a reasonable conclusion using a rational process." ***Id.***

¶23    Alden allegedly sent Curry an email, titled "cleaning up spa," on June 12, 2017, which broadly referenced items of personal property.  The email stated: "I wanted to let you know that we cleaned out the closet in the facial room and more of the basement.  If you want those boxes, records etc.[,] I will have some of my crew drop them off at your driveway."  There was no reference to furnishings, product, or any other items of Curry's property being returned.  Curry denied receiving this email, and Alden testified that Curry never responded to it.

¶24    At trial, when Alden attempted to admit Exhibit 7, the circuit court sustained a hearsay objection, stating that it was an out-of-court statement being offered for the truth of the matter asserted. *See* WIS. STAT. §§ 908.01, 908.02. Alden then attempted to argue that the document should be admitted under the business records exception, but the court again sustained the objection. At the close of evidence, Alden proposed redacting sentences from Exhibit 7 in another effort to admit it. The court subsequently held a hearing regarding the contested trial exhibits by video conference on November 2, 2021. By order, the court sustained the objection to Exhibit 7 and denied admission.

¶25    On appeal, Alden now argues that she was not offering Exhibit 7 for the truth of the matter asserted but to show that Alden sent that message on that date—to rebut any claim that Alden fabricated her testimony regarding sending the email—and to demonstrate Alden's state of mind regarding her intent as it pertains to WIS. STAT. § 895.446. Alden also claims that the "[t]hen existing mental, emotional, or physical condition" hearsay exception under WIS. STAT. § 908.03(3) applies to Exhibit 7. These arguments were not made before the circuit court.[12] *See **State v. Caban***, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997) ("The general rule is that issues not presented to the circuit court will not be considered for the first time on appeal.").

---

[12] It does not appear that a transcript of the November 2, 2021 hearing was included in the record on appeal, and neither of the parties direct this court's attention to any discussion in the record of the arguments presented at that hearing. Therefore, it is possible that these arguments were made before the circuit court, but we are unable to confirm that to be true. It is the appellant's responsibility to ensure that the record on appeal is complete, and any missing material is presumed to support the circuit court's ruling. ***Fiumefreddo v. McLean***, 174 Wis. 2d 10, 26-27, 496 N.W.2d 226 (Ct. App. 1993). As the current appellate record stands, Alden did not make these arguments before the circuit court.

¶26     Nevertheless, for the purpose of this decision, we will assume, without deciding, that the circuit court erroneously exercised its discretion by refusing to admit Exhibit 7 at trial; however, we conclude that this error was harmless. *See State v. Britt*, 203 Wis. 2d 25, 41, 553 N.W.2d 528 (Ct. App. 1996). Generally, an error is harmless if it does not affect the substantial rights of the adverse party. *See Weborg v. Jenny*, 2012 WI 67, ¶68, 341 Wis. 2d 668, 816 N.W.2d 191; WIS. STAT. § 805.18. "The test is the same in both civil and criminal cases: whether 'it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Allsop Venture Partners III v. Desmond*, 2023 WI 43, ¶39, 407 Wis. 2d 387, 991 N.W.2d 320 (citations omitted). Whether an error was harmless is a question of law, subject to our independent review. *Weborg*, 341 Wis. 2d 668, ¶43.

¶27     We conclude that the failure to admit Exhibit 7 did not contribute to the verdict. Even if Exhibit 7 had been admitted for the purposes Alden now claims—i.e., to show that Alden sent Curry the email on that date, to show that Alden did not fabricate her testimony regarding the email, and to help demonstrate Alden's state of mind—Exhibit 7 does not completely counteract the other evidence at trial regarding Alden's credibility and her intent such that it would have affected the verdict. As noted above, the circuit court specifically stated that it did not find Alden credible and cited multiple reasons for that finding on the record. Admission of Exhibit 7 alone would not have tipped the balance on Alden's credibility.

¶28     Further, Alden testified at trial that in the email she sent, she "offered to deliver some things to [Curry] if she wanted them." However, as noted above, in the email it appears that Alden actually offered to return only "boxes, records etc." located in a closet and in the basement. There was no mention of the

other personal property or retail product located on the premises, which provided the basis for the court's damages award and verdict. In summary, it appears beyond a reasonable doubt that the court's refusal to admit Exhibit 7 did not contribute to the verdict obtained.

### III. WISCONSIN STAT. § 704.05 Is Not Applicable to Curry's Personal Property.

¶29     Next, Alden argues that the circuit court erred by not applying WIS. STAT. § 704.05(5)(a)1.—the presumption of abandonment—to Curry's personal property. Section 704.05(5)(a)1. provides:

> If a tenant removes from or is evicted from the premises and leaves personal property, the landlord may presume, in the absence of a written agreement between the landlord and the tenant to the contrary, that the tenant has abandoned the personal property and may, subject to par. (am) and [WIS. STAT. §] 799.45(3m), dispose of the abandoned personal property in any manner that the landlord, in its sole discretion, determines is appropriate.

Alden claims that she evicted Curry on May 31, 2017, and Curry subsequently abandoned her personal property within the premises. According to Alden, there was "no written evidence that Curry asked Alden for any items inside the [p]roperty, or otherwise put Alden on notice of any potential claim related to her personal property" until Curry filed the counterclaims in this case.

¶30     In support of her position, Alden cites the legislature's comment within the statute, which provides in pertinent part:

> Sub. (5) is new. It is intended to provide a simple remedy for the landlord faced with personal property left on the premises by a tenant either at the end of his [or her] lease or when he [or she] moves out during a lease. In many cases the property left behind has little value and has in fact been abandoned by the tenant. However, abandonment as a judicial concept requires proof and finding of intent to abandon. The landlord who disposes of such goods at present runs the risk that he will be sued by

17

> the tenant for conversion and that a jury may place a high value on the apparently worthless goods.

1969 Wis. Act 284, § 25 (cmt.). Alden claims the very risk that the legislature was concerned about occurred in this case. She also calls the circuit court's finding that Curry did not abandon her personal property at the premises to be "conclusory," claiming the court "needed to explain how Curry rebutted the statutory presumption."

¶31 "Statutory interpretation and applying a statute to a set of facts are both questions of law which this court reviews de novo." *State v. Bodoh*, 226 Wis. 2d 718, 724, 595 N.W.2d 330 (1999). Our interpretation of the statute "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* Importantly, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46.

¶32 We conclude that WIS. STAT. § 704.05(5)(a)1. is entirely inapplicable under the circumstances of this case. The plain language of the statute requires that the tenant either "removes from or is evicted from the premises," neither of which occurred here. The circuit court specifically found based on the evidence in the record "that there was not a voluntary removal by Curry or her business from the premises."

¶33 Curry was also not evicted. The word "evict" means "[t]o expel (a person, esp. a tenant), from real property, [usually] *by legal process*." *Evict*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). Eviction, the noun of evict, means "[t]he act or process of *legally* dispossessing a person of land or rental property," *Eviction*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added), which is distinct from the definition of constructive eviction, *see Constructive Eviction*, BLACK'S LAW DICTIONARY (11th ed. 2019). The circuit court specifically determined that Alden did not legally evict Curry pursuant to the requirements under WIS. STAT. ch. 704. Alden therefore cannot rely upon WIS. STAT. § 704.05(5)(a)1. in her effort to retain Curry's property.

¶34 Alden claims, however, that "[t]he fact that Alden constructively evicted Curry does not change this analysis" because the statute provides "no distinction for the process." We disagree. Essentially, Alden is claiming that a landlord can, under WIS. STAT. § 704.05(5)(a)1., unlawfully lock a tenant out of a leased premises without notice and then lawfully presume ownership of the tenant's business and personal property. We agree with Curry's reasoning for why Alden's position is untenable:

> Considered in the context of the Drafters' Notes, the weakness of the argument becomes even more apparent. Alden was not *faced* with the issue; she *created* it. The property was not *left* by Curry; she was expressly not permitted to retrieve it. Curry was not deprived of her property at the *end of a lease* or as a result of *moving out*. Alden changed the locks specifically to keep Curry and her business associates from entering the premises to conduct their business or retrieve their property. Further, after refusing Curry's and [another's] requests to enter the premises to retrieve their property, Alden had a No Trespass Order issued by the St. Croix Falls Police Department, prohibiting Curry from stepping foot on the property.

*See* 1969 Wis. Act 284, § 25 (cmt.).

¶35    Alden cannot fail to comply with the tenant protection requirements of WIS. STAT. ch. 704 but then expect to benefit from the presumption in WIS. STAT. § 704.05(5)(a)1.    The circuit court clearly—and, we determine, reasonably—found that Curry did not abandon the property but that it was stolen from her by Alden.  Based on the evidence already addressed above, the court's finding that Curry did not abandon her property was not clearly erroneous.

*IV. Curry's Personal Property Was Correctly Addressed Outside a Contract.*

¶36    Alden's next arguments all pertain to her belief that "the circuit court's finding that Alden breached a lease agreement with Curry dictates that it should have awarded Curry all damages that 'naturally arise from the breach.'"  Based on that proposition, Alden asserts that: (1) Curry cannot receive punitive damages for a constructive eviction;[13] (2) Curry cannot recover for unjust enrichment because unjust enrichment is only available in the absence of a contract; and (3) Curry cannot recover for conversion under the independent duty

---

[13] "A constructive eviction constitutes a breach of the covenant for quiet enjoyment." *First Wis. Tr. Co. v. L. Wiemann Co.*, 93 Wis. 2d 258, 267, 286 N.W.2d 360 (1980).

> Any act of the landlord or of anyone who acts under authority or legal right given to him [or her] by the landlord which so disturbs the tenant's enjoyment of the premises or so interferes with his [or her] possession of the premises as to render them unfit for occupancy for the purposes for which they are leased, is an eviction, and whenever it takes place, the tenant is released from the obligation under the lease to pay rent accruing thereafter.

*Id.* at 267-68.  However, "[a] mere slight temporary inconvenience to the tenant does not justify [the tenant] in throwing up his [or her] lease"; "the breach must be substantial and of such duration that it can be said that the tenant has been deprived of the full use and enjoyment of the leased property for a material period of time." *Id.* at 268 (citation omitted).

rule because Alden did not have any duty to Curry independent from the rights found in the contract. We disagree on each point.

¶37    We recognize initially that Alden's position on these issues arises from her continued assertion that she evicted Curry for failing to pay rent.[14] According to Alden, Curry breached the lease agreement by failing to pay rent, and "Alden thus had a legitimate basis to evict Curry; she just did so improperly." Alden then argues that "a contract exists" and that "[t]he court found that Alden and Curry signed a 'written commercial lease,' that Curry intended to rent the property on behalf of her business, and that Curry breached [the lease]." In contrast, Curry claims that "the court found no actual contract at all but rather an implied agreement to rent premises, which it found breached by Curry, not Alden."

¶38    In its oral ruling, the circuit court stated:

> Whether it was Majestic Falls, Majestic Wellness Spa or some other entity[,] it was the intention of Curry to rent the premises from Alden and it was the intention of Alden to rent the premises to Curry.
>
>    ....

---

[14] We pause to acknowledge Curry's argument that Alden is taking inconsistent positions before this court and the circuit court. *See* **State v. Miller**, 2004 WI App 117, ¶31, 274 Wis. 2d 471, 683 N.W.2d 485 (discussing the doctrine of judicial estoppel); **State v. Caban**, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997) ("The general rule is that issues not presented to the circuit court will not be considered for the first time on appeal."). Curry claims that Alden argued before the circuit court that "no contract existed between Curry/[Majestic Falls, Inc.] and Alden or [Alden Associates]" and that Curry was a trespasser. Alden responds that "as evidenced by Alden's breach of contract claim, she did argue the existence of a lease agreement. The circuit court just found that the contract existed between different entities." Alden observes that "the court's decision to find a valid contract between Alden and Curry—instead of 'Alden Associates LLC' and 'Majestic Wellness Spa'—triggered the issues that are now on appeal." Given the intricacies of the arguments and the fact that Alden's positions are not clearly inconsistent given the involvement of multiple entities, we will consider Alden's arguments.

21

> Based upon that evidence the court finds that there was an agreement between Alden and Curry. The *best available evidence of the terms of the rental agreement* is [the written commercial lease]. It was signed by both parties. That was for rent to be $1,675 per month. Curry agreed to pay rent and she did not pay rent, so she's in breach and Alden is entitled to damages.

(Emphasis added.) Again, as stated above, the court did not find that Alden lawfully evicted Curry, concluding instead that Alden constructively evicted Curry and then acted to unlawfully retain Curry's property. This situation was more than an eviction gone wrong, and Curry's recovery of damages is based on that finding.

¶39 Regardless of whether there was a valid written lease or an implied agreement to lease the premises, the circuit court properly awarded damages outside of any contract. "Contract damages compensate the wronged party for damages that arise naturally from the breach." *Kramer v. Board of Educ. of Sch. Dist. of Menomonie Area*, 2001 WI App 244, ¶10, 248 Wis. 2d 333, 635 N.W.2d 857. "The damages are limited by the concept of foreseeability"; therefore, "[r]ecovery is limited to damages reasonably supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of a breach." *Id.*; *see also* WIS JI—CIVIL 3710 (2018) ("In determining the damages, if any, … allow an amount that will reasonably compensate the injured person for all losses that are the natural and probable results of the breach.").

¶40 We agree with Curry that entirely apart from Alden's acts amounting to a constructive eviction, Alden's subsequent conduct constituting theft of Curry's personal property did not naturally arise from any breach of an implied agreement, it was not a probable result of a breach, and it was certainly not contemplated by Curry when she agreed to rent the premises. Even if Curry was aware of the possibility that she might be barred from the premises at some point

prior to May 31, 2017, that fact does not render Alden's conduct in retaining Curry's property and operating her business out of the premises foreseeable at the time the parties may have entered into an agreement. Thus, any claims and any damages arising out of that conduct are not based on a breach of any alleged agreement. We address the following challenges with that conclusion in mind.

### a. Punitive Damages

¶41 Alden argues that Curry is unable to receive punitive damages for the breach of contract that occurred in this case. The legal remedy of punitive damages may be available if the plaintiff proves that "the defendant acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff." WIS. STAT. § 895.043(3). Whether punitive damages are available is a question of law reviewed de novo. *Tucker v. Marcus*, 142 Wis. 2d 425, 432, 418 N.W.2d 818 (1988).

¶42 "Under Wisconsin law, punitive damages are not available as a remedy in a breach of contract action." *Mohns Inc. v. BMO Harris Bank Nat'l Ass'n*, 2021 WI 8, ¶58, 395 Wis. 2d 421, 954 N.W.2d 339. In its oral ruling, the circuit court awarded Curry $2,500 in punitive damages. While Alden claims that punitive damages were awarded "for Alden's breach of the lease agreement," Curry argues that the court found that "Alden constructively evicted Curry" but did not state that it was finding that Alden breached a contract.

¶43 We conclude that the circuit court's award of punitive damages was not in error. The punitive damages were expressly awarded for the "willful

conduct of Alden in the constructive eviction."[15]  This willful conduct, as described by the court, constituted not only the act of changing the locks on the premises and preventing Curry from entering the premises, but importantly for the court's punitive damages award, Alden's refusal to permit Curry to retrieve her property, her failure to return Curry's personal property, her act of improperly obtaining a trespass notice, and her retention of Curry's personal property and retail product on the premises for use in Alden's own business.  Thus, the punitive damages were awarded for Alden's actions taken *after* the constructive eviction.  The court's findings support a conclusion that Alden intentionally took and refused to return Curry's personal property and intentionally harmed Curry's business.  Thus, the punitive damages were not based on a breach of contract or an implied agreement, but rather on tort liability as a result of Alden converting Curry's property.  *See id.* ("A jury's award of punitive damages must be based upon a finding of tort liability."); *see also Landwehr v. Citizens Tr. Co.*, 110 Wis. 2d 716, 722-23, 329 N.W.2d 411 (1983) ("Ordinarily, a breach of contract is not a tort, but a contract may create the state of things which furnishes the occasion of a tort." (citation omitted)).

### b. Unjust Enrichment

¶44    Alden argues that Curry cannot recover for unjust enrichment because the circuit court found that a contract existed.

> [A] claim for unjust enrichment does not arise out of an
> agreement entered into by the parties.  Rather, an action for

---

[15] We note that Alden does not specifically challenge either the circuit court's finding that Curry had proven that Alden's actions satisfied the standard of conduct described in WIS. STAT. § 895.043(3) or the amount of the punitive damages award.  We do not discuss these issues further.

> recovery based upon unjust enrichment is grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust.

*Sands v. Menard*, 2017 WI 110, ¶30, 379 Wis. 2d 1, 904 N.W.2d 789 (alteration in original; citation omitted). The claim requires proof of three elements: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." *Id.* "Under Wisconsin law, a plaintiff may not recover damages for both breach of contract and unjust enrichment based on the same conduct." *Mohns Inc.*, 395 Wis. 2d 421, ¶48. "While a [circuit] court's decision to grant equitable relief in an action for unjust enrichment is discretionary, the application of the facts to the unjust enrichment legal standard is a question of law that we review de novo."[16] *Tri-State Mech., Inc. v. Northland Coll.*, 2004 WI App 100, ¶13, 273 Wis. 2d 471, 681 N.W.2d 302 (citation omitted).

¶45 As we discussed above, even if the circuit court found that a lease agreement existed, not only were Alden's conduct and the resulting damages not contemplated within the terms of that agreement, but Curry's unjust enrichment claim did not "aris[e] out of the same conduct or subject matter" as any breach of the agreement. *See Mohns*, 395 Wis. 2d 421, ¶52. Alden's assertion that the court concluded that the breach of the lease prevented Curry from using her personal property within the premises fails to acknowledge the whole story. The court did not find that Alden breached an agreement by retaining Curry's personal property;

---

[16] Alden does not specifically argue that Curry failed to prove the elements of unjust enrichment or that the circuit court's application of the facts to the elements of the claim was in error. We will not address these issues further.

the two claims do not arise out of the same conduct. Therefore, the damages awarded for unjust enrichment need not be set aside, as the court reasonably acted within its discretion.

### c. Conversion and the Independent Duty Rule

¶46 Alden next argues that the circuit court's finding that Alden converted Curry's property should be reversed because the "independent duty rule" precludes Curry's recovery. "Where a contract is involved, in order for a claim in tort to exist, a duty must exist independently of the duty to perform under the terms of the contract." *Autumn Grove Joint Venture v. Rachlin*, 138 Wis. 2d 273, 281, 405 N.W.2d 759 (Ct. App. 1987). Alden concedes that "neither this [c]ourt nor the Wisconsin Supreme Court have explicitly applied the 'independent duty rule' with conversion," but she claims that "case authority supports its application in this context."

¶47 We are not persuaded by Alden's arguments on this point because we do not agree with her summary assertion that "Alden did not have any duty to Curry independent from the rights found in the [a]greement." According to Alden, "the contract (i.e., lease agreement) precluded Alden from disturbing Curry's personal property inside the leased premises." While Alden's assertion may be true, the circuit court's finding of conversion was not based upon Alden's disturbance of Curry's property inside the leased premises during the lease. The award was based upon Alden's refusal to return Curry's property to her, or permit her to obtain and use it, once the implied lease was terminated. Thus, Curry's claim does not arise under the lease; it arises because Alden stole her property. The fact that Alden did so by keeping the property in the formerly leased premises does not mean there was no conversion. Regardless of any implied lease, Alden

26

had an independent duty not to steal Curry's personal property. As Curry argues, "Renting premises is mutually exclusive from having your property stolen…. Alden's intentional conduct in converting the property had nothing to do with the parties' implied lease arrangement."

*V. The Circuit Court Properly Assessed and Awarded Damages.*

¶48    Finally, Alden argues that the circuit court erroneously awarded inflated, overstated, and noncredible damages. More specifically, Alden claims that Curry failed to prove "by credible evidence" that she suffered $251,457 in damages with "reasonable certainty." "We apply a highly deferential standard of review to damage awards, affirming if there is any credible evidence which under any reasonable view supports the finding." *Selmer Co. v. Rinn*, 2010 WI App 106, ¶28, 328 Wis. 2d 263, 789 N.W.2d 621. "It is not [the reviewing court's] purpose to determine whether damage awards are high or low, nor to substitute [its] judgment for that of the jury or the [circuit] court but rather to determine whether the award is within reasonable limits." *Id.* (first and second alterations in original; citation omitted). Damages must be established with reasonable certainty but not with mathematical precision. *See Management Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 189, 557 N.W.2d 67 (1996).

¶49    Curry was the only party to submit evidence as to valuation of property at the trial. Based on the evidence Curry presented, she asked the circuit court to find that the value of the personal property and retail product left on the premises on May 31, 2017, was $322,181. The court initially opined that Curry's "replacement values appear to be inflated, overstated, and not particularly credible given the court has already found that Curry is not particularly credible." The court then reduced the value of the personal property to $251,457. On this record,

Alden argues that the court's ultimate decision on damages was in error. Again, we disagree that the court erred.

¶50    Curry testified as the business owner who had personal knowledge regarding the personal property and retail product contained on the premises. For trial, Curry prepared a detailed list of the items in each room of the property and their values. Curry testified that she prepared the list "from memory" and that it was based on "days" of "research[ing] replacement value" "[o]n the Internet with the company and the brands." She stated that she believed that these values represented accurate replacement values for the items. Curry also explained that there were some items that she could not put a value on because they were "one-of-a-kind artwork and sentimental items that [she had] received as gifts throughout 18 years."

¶51    The circuit court credited Curry's testimony as well as her list of values. As the court acknowledged, "In Wisconsin, the general rule is that a non-expert owner may testify concerning the value of their property, regardless of whether it is realty or personalty" and "[t]he weight to be attached to a non-expert owner's testimony is for the trier of fact." *Mayberry v. Volkswagen of Am., Inc.*, 2005 WI 13, ¶42, 278 Wis. 2d 39, 692 N.W.2d 226 (citation omitted). The court found that there "was no evidence contradicting the Curry valuation other than [Alden's testimony] that the items were old, broken, in such poor repair, or never on the premises or in need of being discarded or that Alden had never seen those items there, or they were procured from thrift stores." The court found, however, that Alden's assertions were contradicted by other evidence presented at trial.

¶52    The record demonstrates that the circuit court conducted a thorough review of the evidence regarding Curry's claimed damages, comparing the

evidence presented by Curry to photographs in the record, as well as other evidence presented, and consulting a spreadsheet to determine the value of the retail product based on the testimony. The court observed that it "[had] to start with the value" on Curry's list and "reduce it." Therefore, we conclude that the court properly considered the only available evidence of value, took into account the weight of the evidence as well as credibility determinations, deducted amounts that it determined were not credibly proven, and arrived at an amount that was within reasonable limits.

¶53 As to Alden's specific argument that the circuit court failed to apply the rule that the evidence of value must be credible because it found Curry's values "inflated, overstated, and not particularly credible," we are not persuaded. In setting damages sustained by a party, a fact-finder is not limited to the amounts given by the witnesses. *See Milwaukee Rescue Mission, Inc. v. Redevelopment Auth.*, 161 Wis. 2d 472, 485, 468 N.W.2d 663 (1991). Instead, the fact-finder may assess the credibility of that evidence against all of the circumstances in the case and arrive at a figure it believes is warranted by the evidence. *See Cutler Cranberry Co. v. Oakdale Elec. Coop.*, 78 Wis. 2d 222, 234-35, 254 N.W.2d 234 (1977) ("[W]here the fact of damage is clear and certain, but the amount is a matter of uncertainty, the [circuit] court has discretion to fix a reasonable amount. Simply because the amount is uncertain, the [circuit] court should not deny recovery altogether." (citation omitted)). The court made its statements about the

credibility of the evidence to explain its reason for reducing or denying the provided values. We see no error.[17]

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[17] Alden also argues that the circuit court erroneously awarded Curry the replacement value of her property because she claims that Alden is not liable under WIS. STAT. § 895.446. Because we have already concluded that the court properly determined that Alden is liable for civil theft, we need not address this argument.